**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GIANNA MCNEALY,
an individual,

Case No.:

Plaintiff,

v.

IDEAL COLLECTION SERVICES, INC.,
a Florida profit corporation,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

Defendants.
_________________________________________/

## COMPLAINT

**COMES NOW**, Plaintiff, GIANNA MCNEALY (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, IDEAL COLLECTION SERVICES, INC., (hereinafter, "Ideal"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") and TRANS UNION LCC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants").

In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1. This is an action brought by an individual consumer for damages for Defendants' violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Defendants' improperly credit-reported and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union that was created or allegedly incurred as a result of identity theft and fraud.

2. More specifically, despite Plaintiff repeatedly advising Defendants that she did not execute any lease with Lighthouse Bay Apartments (hereinafter, "Alleged Debt" or "Lease Account") nor was she ever a resident there—and after Plaintiff disputed Defendants' reporting of such erroneous information directly to Equifax, Experian, and Trans Union on multiple occasions, each continued to report the alleged Account as belonging to Plaintiff with a significant balance due and past-due.

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4. Defendants are subject to the jurisdiction of this Court, as Defendants each regularly transact business in this District.

5. Venue is proper in this District as Defendants each regularly conduct

business in this District, and the acts and transactions described herein occur in this District.

6. At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

7. At all material times, Ideal is a Florida profit corporation existing under the laws of the state of Florida, with its principal place of business located at 5223 A Ehrlich Road, Tampa, Florida 33624.

8. At all material times, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

9. At all material times Experian is a foreign profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

10. At all material times, Trans Union is a foreign limited liability company existing under the laws of Delaware with its principal place of business at 555 West Adams Street, Chicago, IL 60661.

## FCRA STATUTORY STRUCTURE

11. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information. *See* 15 United States Code, Section 1681b.

12. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

14. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

15. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

16. Under the FCRA, after a furnisher of information receives notification

pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

**GENERAL ALLEGATIONS**

19. At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

20. At all material times herein, Defendants, themselves and through their subsidiaries, regularly credit-report information associated with the same with respect to individuals residing in Hillsborough County, Florida.

21. At all material times herein, Ideal, themselves and through their subsidiaries, regularly service consumer credit and credit-reports information associated with the same in Hillsborough County, Florida.

22. At all material times herein, Defendant Ideal is considered a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

23. Ideal furnishes and reports specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

24. At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of

furnishing consumer reports. Equifax, Experian, and Trans Union disburse such consumer reports to third parties under contract for monetary compensation.

25. At all material times herein, Plaintiff did not make the charges that resulted in the Alleged Debt, through Ideal, referenced by a collections Account in the amount of $2,178.00, (Hereinafter, "Alleged Debt" or "Lease Account") did not authorize the creation of the charges, and did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

26. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

27. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

28. On or about November 22, 2023, Plaintiff's mother Venice Fisher, executed a lease with Lighthouse Bay Apartments, located at 5055 S. Dale Mabry Highway, Tampa, Florida, 33611.

29. Plaintiff was listed on the lease document as a resident to the lease accompanied by her full social security number.

30. To be clear, Plaintiff never at any time executed the lease document.

31. Plaintiff's mother, Venice Fisher, was the only person to execute the lease.

32. In fact, Plaintiff never moved into the apartment.

33. At some point in June of 2026, Plaintiff pulled her Equifax, Experian, and Trans Union credit reports where she noticed the Lease Account was listed on all three credit reports as belonging to Plaintiff, and delinquent with a past due balance owed.

## DEFENDANTS' CREDIT REPORTING OF THE ACCOUNT AND PLAINTIFF'S DISPUTES

34. On or about July 16, 2026, Plaintiff, with the assistance of her attorney, wrote a dispute letter to Equifax, Experian, and Trans Union advising them of the fraudulent Lease Account charge and urged them to delete the Account from her credit report and credit files. (Hereinafter, "Plaintiff's First Dispute").

35. More specifically, Plaintiff's First Dispute advised Equifax, Experian, and Trans Union that the underlying Alleged Debt reported on did not belong to Plaintiff and she was not responsible for the debt as she never executed the lease and never resided there.

36. In support of Plaintiff's First Dispute, Plaintiff enclosed (1) a copy of her driver's license, (2) a Tampa utility bill showing Plaintiff's current address at 3906 W. Azeele Street, and (3) the signature page of the Lighthouse Bay Apartment lease agreement showing Plaintiff's name listed as a resident with no authorization or signature attached.

37. Experian received Plaintiff's First Dispute by certified mail.

38. Equifax received Plaintiff's First Dispute by certified mail.

39. Trans Union received Plaintiff's First Dispute by certified mail.

40. At some point after July of 2026, Plaintiff obtained copies of her consumer disclosure reports as maintained by Equifax, Experian, and Trans Union.

41. Plaintiff's Experian, Equifax, and Trans Union credit reports were *still* reporting the Lease Account as belonging to Plaintiff with a significant balance owed.

42. On or about August 19, 2026, Plaintiff, with the assistance of her attorney, wrote *another* dispute letter to Equifax, Experian, and Trans Union advising them of the fraudulent Lease Account charge and urged them to delete the Account from her credit report and credit files. (Hereinafter, "Plaintiff's Second Dispute").

43. Plaintiff again enclosed (1) a copy of her driver's license, (2) a city of Tampa utility bill from June 2026 showing Plaintiff's current address at 3906 W. Azeele Street, and (3) the signature page of the Lighthouse Bay Apartment lease agreement showing Plaintiff's name listed as a resident with no authorization or signature attached in support of her Second Dispute Letter.

44. In response to Plaintiff's Second Dispute, Trans Union correctly removed the Lease Account from Plaintiff's credit report and credit files.

45. Despite this, Equifax received Plaintiff's Second Dispute, and her credit report was *still* reporting the Lease Account as accurate and attributable to Plaintiff.

46. Additionally, Experian received Plaintiff's Second Dispute letter and verified the Lease Account as accurate and attributable to Plaintiff.

47. To the extent that charges were made on the Account resulting in an alleged balance due (i.e., the Alleged Debt), Plaintiff did not make any such charges herself, Plaintiff did not authorize any other individual or entity to make charges for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of charges made on the Lease Account.

**DAMAGES**

48. As a result of Defendants' unlawful reporting of the Lease Account and Alleged Debt, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

49. Following Plaintiff's Disputes, Equifax, Trans Union, and Experian each generated and published Plaintiff's credit reports to Plaintiff's current creditors and potential lenders which contained the inaccurate fraudulent Account and failed to show that Plaintiff did not make payment for these fraudulent charges and did no incur the charges personally.

50. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's Account following the thorough disputes by Plaintiff.

51. Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

52. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

53. As a result of Defendants' conduct, actions, and inactions, Plaintiff believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Lease Account, and she was evaluated for credit using consumer reports that reported the fraudulent Account as owed by Plaintiff personally with a significant balance past due.

54. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion in assuming Plaintiff must simply endure Defendants' unlawful reporting of the Account.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(as to Ideal)**

Plaintiff re-alleges paragraphs one (1) through fifty-four (54) as if fully restated

herein and further states as follows:

55. Ideal is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and Trans Union correct the reporting of the Account on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

56. Ideal received ACDVs from Experian, Trans Union, and Equifax regarding Plaintiff's multiple disputes, and Ideal falsely verified its reporting as still owed following Plaintiff's First Dispute.

57. As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit applications, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as a derogatory, negative, or adverse tradeline account.

58. Ideal's conduct was a direct and proximate cause of, as well as a

substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

59. Ideal's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Experian, Equifax, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one-hundred and fifty-four (54) as if fully restated herein and further states as follows:

60. Equifax, Experian, and Trans Union are subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

61. Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Alleged Debt.

62. Despite Plaintiff's multiple repeated disputes advising Equifax, Experian, and Trans Union of the same, Defendants continued to unlawfully report the

fraudulent Account with an inaccurate and inflated balance owed.

63. Such reporting of the Account is false and evidences Equifax's, Experian's, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

64. Following Plaintiff's First Dispute, Equifax and Trans Union merely responded by verifying the Account and thus failed to conduct an investigation into Plaintiff's First Dispute.

65. Between Plaintiff's First Dispute, and the date of this Complaint, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

66. Plaintiff's Second dispute to the above defendants advised that the underlying Alleged Debt reported on the Lease Account did not belong to Plaintiff and requested that Defendants delete all erroneous information from her credit report and credit file.

67. In response to Plaintiff's Second Dispute, Experian and Equifax received and *again* verified the Account as accurate following Plaintiff's Second Dispute.

68. Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her

Equifax, Experian, and Trans Union credit reports and credit file.

69. As a result of Equifax, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, and she was continually evaluated for credit using consumer reports that reported the fraudulent Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

70. Equifax's Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

71. Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)**
**(As to Experian, Trans Union, and Equifax)**

Plaintiff re-alleges paragraphs one (1) through fifty-four (54) as if fully restated herein and further states as follows:

72. Equifax, Experian, and Trans Union are subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

73. Specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

74. For example, after receiving Plaintiff's First Dispute, Equifax, Experian and Trans Union each failed to request any documents from Ideal and each failed to obtain documents proving Plaintiff's dispute as fact.

75. Instead, following Plaintiff's First Dispute, Equifax, Experian, and Trans Union ignored information and documents provided by Plaintiff, each parroted purported verifications from Ideal, and each continued to report the fraudulent Account with an inaccurate late monthly payment information and as an account belonging to Plaintiff in the first place.

76. After receiving Plaintiff's Second Dispute—both Equifax and Experian

*again* failed to request any documents from Ideal and wholly ignored the documentation enclosed with Plaintiff's Second Dispute.

77. Rather than conduct their own, independent investigation/re-investigation regarding Plaintiff's disputes, Equifax and Experian, solely relied on Ideal's blanket and parroted assertions that Defendants were entitled to report the fraudulent Account with an incorrect and inflated past-due balance, including but not limited to the inaccurate, incomplete, and misleading reporting of the fraudulent Account as belonging to Plaintiff.

78. Equifax and Experian did not request any documents from Ideal corroborating information furnished and/or verified by Ideal regarding Plaintiff and the Account in response to any of Plaintiff's disputes, and Equifax and Experian wholly ignored the documents submitted by Plaintiff with her repeated disputes.

79. Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

80. As such, Equifax's, Experian's, and Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

81. Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failures to conduct reasonable investigation/re-investigations of Plaintiff's

disputes.

82. Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

83. Equifax's, Experian's, and Trans Union's investigation/reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by Ideal.

84. Equifax's Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted in good faith.

85. Equifax's, Experian's, and Trans Union's investigation/re-investigation procedures are unreasonable.

86. Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax and Experian.

87. Equifax's, Experian's, and Trans Union's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

88. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, and she was continually evaluated for credit using consumer reports that reported the Account with

a fraudulent and past balance owed.

89. Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

90. Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgement against Ideal, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

b. Actual damages in an amount to be determined at trial;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. An award of attorney's fees and costs; and

f. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

**SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*
Jon P. Dubbeld, Esq., FBN 105869
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*